UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jeffrey M. Gray

    v.                                    Case No. 20-cv-152-PB

Helen E. Hanks et al.[1]

**REPORT AND RECOMMENDATION**

Plaintiff Jeffrey Gray, while he was incarcerated at the New Hampshire State Prison, filed a pro se complaint pursuant to 42 U.S.C. § 1983 against the New Hampshire Department of Corrections ("DOC") and three DOC employees. Mr. Gray alleges that the defendants denied him religious services in violation of his federal constitutional and statutory rights. The complaint is before this court for preliminary review, pursuant to 28 U.S.C. § 1915A(a) and Local Rule 4.3(d)(1).

**Background**

From December 2017 until December 2018, Mr. Gray was housed in the DOC's Secure Psychiatric Unit ("SPU") because he suffered from post-traumatic stress disorder, persistent major depression, attention deficit hyperactivity disorder, and a

---

[1]The defendants identified in the complaint are: the New Hampshire Department of Corrections ("DOC"), DOC Commissioner Helen Hanks, DOC Secure Psychiatric Unit ("SPU") Director Paula Mattis, and SPU Unit Manager Capt. Scott Marshall.

1

personality disorder.  At that time, Mr. Gray had a medium custody security status.  While housed in the SPU, Mr. Gray requested various religious services and materials from prison officials, including pastoral counseling services, access to religious texts at the prison library, participation in religious study groups and Sunday morning services, and regular clergy visits.  He sought those services on at least three occasions, in written requests directed to SPU Unit Manager Captain Scott Marshall, SPU Director Paula Mattis, and DOC Commissioner Helen Hanks.  Each of them denied his requests.  In the meantime, Mr. Gray alleges, medium-custody inmates housed in the general population were permitted those religious services.

   Mr. Gray is suing Capt. Marshall, Director Mattis, and Commissioner Hanks (collectively, "individual defendants") in their personal capacities on the ground that their denials of his requests for religious services violated his rights under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 et seq. ("ADA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc et seq. ("RLUIPA").  He also asserts claims against the DOC under the ADA and RLUIPA.  The only relief Mr. Gray seeks is damages.

**Preliminary Review Standard**

The court conducts a preliminary review of prisoner complaints filed by inmates seeking relief from government employees or entities. See 28 U.S.C. § 1915A(a); LR 4.3(d)(1). Claims may be dismissed if the court lacks jurisdiction, a defendant is immune from the relief sought, or the complaint fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915A(b); LR 4.3(d)(1)(A). In considering whether the complaint states a claim, the court determines whether, stripped of legal conclusions, and with all reasonable inferences construed in the plaintiff's favor, the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

**Discussion**

The court addresses Mr. Gray's First Amendment, Equal Protection Clause, ADA, Rehabilitation Act, and RLUIPA claims in turn, and concludes that only the First Amendment claim passes muster at the preliminary review stage.

I.   First Amendment Claim

Mr. Gray asserts that the individual defendants violated his rights under the First Amendment when they denied his

3

requests for religious services while he was housed in the SPU. Mr. Gray's allegations are sufficient to state a claim under the First Amendment's Free Exercise Clause against those defendants, and in an Order issued simultaneously with his Report and Recommendation, the court directs service of that claim.

The First Amendment's Free Exercise Clause "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). This provision applies to the states under the Fourteenth Amendment. See Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 8 n.4 (2004). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," including the right to the free exercise of religion. Pell v. Procunier, 417 U.S. 817, 822 (1974); see O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). The First Amendment protects the exercise of a prisoner's sincerely held religious beliefs only to the extent that the exercise does not contravene prison regulations that are "reasonably related to legitimate penological interests." Beard v. Banks, 548 U.S. 521, 528 (2006) (quoting Turner v. Safley, 482 U.S. 78, 87 (1987)).

Mr. Gray's allegations that his requests for religious services, including clergy visits and Sunday morning services,

were denied are sufficient to allege a denial of a central and essential religious practice. In the absence of evidence of legitimate penological interests, the court is left to conclude that Mr. Gray has plausibly alleged that those denials improperly impinged upon his First Amendment right to exercise his religion.

II. Equal Protection Claim

Mr. Gray's equal protection claim, asserted against the individual defendants in their personal capacities, is centered on the allegation that his requests for religious services were denied while other medium-custody inmates, housed in the general population, were allowed such services. The district judge should dismiss that claim for failure to state a claim upon which relief may be granted.

"The Fourteenth Amendment's Equal Protection Clause prohibits a state from treating similarly situated persons differently because of their classification in a particular group." Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105-06 (1st Cir. 2015). To state an equal protection claim, a plaintiff must allege facts showing that "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to

5

inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure" the plaintiff. Davis v. Coakley, 802 F.3d 128, 132-33 (1st Cir. 2015) (internal quotation marks omitted). To meet the "threshold requirement" of differential treatment, a plaintiff must "identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently," to show that he was "singled out for unlawful oppression." Ayala-Sepúlveda v. Munic. of San Germán, 671 F.3d 24, 32 (1st Cir. 2012) (internal quotation marks omitted). "Unless state action burdens a suspect class or impinges upon a fundamental right, [courts] review equal protection claims for a rational relationship between the disparity of treatment and a legitimate government purpose." Toledo v. Sanchez, 454 F.3d 24, 33 (1st Cir. 2006).

Mr. Gray has not pleaded facts sufficient to state an equal protection claim. First, he has not sufficiently alleged that he was similarly situated in all relevant aspects to the inmates housed in the general population who were provided religious services. His allegation that they had in common a medium-custody security status is insufficient to plead this element. Second, Mr. Gray has not pleaded that any of the allegedly selective treatment upon which he bases his equal protection claim was based on an impermissible classification, such as his religion.

To the extent Mr. Gray alleges that the selective treatment was based on his disability, it is well-established that "[t]he disabled are not a suspect class for equal protection purposes." Toledo, 454 F.3d at 33 (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 448-50 (1985)). Thus, to survive dismissal, he must allege that the defendants' actions "were irrational and not motivated by any conceivable legitimate reason." Id. Even reading Mr. Gray's complaint generously, he has failed to allege facts showing that the defendants' failure to accommodate his requests was due to irrational prejudice. To the extent Mr. Gray contends that the defendants violated his equal protection rights by actively discriminating against him based on his disability, as opposed to failing to accommodate his requests, "mere conclusory allegations of discrimination unsupported by any facts are insufficient for notice pleading purposes." Id. at 34. Accordingly, the district judge should dismiss Mr. Gray's equal protection claim.

III. ADA and Rehabilitation Act Claims

Mr. Gray asserts that both the DOC and the individual defendants violated his rights under Title II of the ADA and Section 504 of the Rehabilitation Act. He alleges in a conclusory fashion that, in denying his requests for religious services, the defendants discriminated against him on account of

7

his disability.  He has failed to state a claim upon which relief may be granted.

Title II of the ADA and Section 504 of the Rehabilitation Act "provide, in nearly identical language, that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" Nunes v. Mass. Dep't of Corr., 766 F.3d 136, 144 (1st Cir. 2014) (citing 42 U.S.C. § 12132; 29 U.S.C. § 794(a)).  A state prison is a "public entity."  Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209–10 (1998).  To state a plausible claim under either statute, a plaintiff must allege: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability."  Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000).

The district judge should dismiss the disability discrimination claims against all defendants for failure to state a claim.  Although Mr. Gray has pleaded that he is a qualified individual with a disability on account of his mental

8

impairments, he has asserted no facts to support his bare allegation that the defendants denied him religious services because of his disability. The mere fact that the defendants refused his requests does not permit a reasonable inference that they did so because of his disability. Cf. Lebron v. Commw. of P.R., 770 F.3d 25, 31 (1st Cir. 2014) ("Simply alleging in a conclusory fashion that the defendants engaged in 'intentional discrimination,' as does the complaint here, is not enough to satisfy the pleading standard."); Toledo, 454 F.3d at 33 (similar).

Additionally, Mr. Gray's disability discrimination claims against the individual defendants are not cognizable. Title II of the ADA prohibits discrimination by a "public entity," defined as any state or local government, department, agency, or other instrumentality. 42 U.S.C. § 12131(1). Section 504 of the Rehabilitation Act prohibits discrimination by a federally funded "program or activity," including public entities and private businesses. See 29 U.S.C. § 794(b). By definition, an individual is neither a "public entity" nor a "program or activity," which means that individuals cannot be sued in their personal capacities directly under the provisions of either statute. See Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999).

Mr. Gray cannot circumvent this limitation by asserting his personal-capacity discrimination claims under § 1983. Although the First Circuit has not addressed the issue, the majority of circuit courts have held that public officials cannot be sued in their personal capacities under § 1983 predicated on alleged violations of Title II of the ADA or Section 504 of the Rehabilitation Act. See, e.g., Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002); Garcia v. State Univ. of N.Y. Health Scis. Ctr., 280 F.3d 98, 107 (2d Cir. 2001); Lollar v. Baker, 196 F.3d 603, 609-10 (5th Cir. 1999). These courts have reasoned that the ADA and the Rehabilitation Act provide comprehensive internal enforcement mechanisms that foreclose resort to the general enforcement provisions of § 1983. See, e.g., Lollar, 196 F.3d at 609-10. This court agrees with these well-reasoned opinions and likewise concludes that the disability discrimination claims asserted against the individual defendants in their personal capacities are not cognizable.

IV.  RLUIPA Claims

Mr. Gray asserts a violation of his right to freely practice his religion under RLUIPA. The district judge should dismiss the RLUIPA claims as to all defendants.

To the extent a violation of RLUIPA is asserted against the DOC, the Eleventh Amendment bars the claim. As a state entity,

the DOC enjoys "sovereign immunity to private suits for money damages under RLUIPA." Sossamon v. Texas, 563 U.S. 277, 293 (2011). There is no suggestion that the DOC has waived its immunity for purposes of Mr. Gray's RLUIPA claim. Accordingly, the district judge should dismiss that claim against the DOC. See 28 U.S.C. § 1915(e)(2).

Mr. Gray's personal-capacity RLUIPA claim fares no better. In the absence of binding precedent from the First Circuit, "this court has aligned itself with the majority of courts that have addressed the issue, in holding that RLUIPA does not authorize claims for damages asserted against defendants in their individual capacities." Ayuso v. Zenk, No. 16-CV-317-PB, 2016 WL 7076994, at *1 (D.N.H. Oct. 31, 2016), 2016 U.S. Dist. LEXIS 167391, at *2-*3, R&R approved sub nom. Ayuso v. N.H. State Prison, 2016 WL 7052969, 2016 U.S. Dist. LEXIS 167391 (D.N.H. Dec. 5, 2016); see Howard v. Skolnik, 599 F. App'x 323, 323 (9th Cir. 2015); Cryer v. Spencer, 934 F. Supp. 2d 323, 333 (D. Mass. 2013) (collecting Third, Fourth, Fifth, Seventh, Tenth, and Eleventh Circuit cases). Thus, the District Judge should dismiss the RLUIPA claims against the individual defendants, whom Mr. Gray has sued in their personal capacities only.

**Conclusion**

For the foregoing reasons, the district judge should dismiss Mr. Gray's equal protection, ADA, Rehabilitation Act, and RLUIPA claims against all defendants, dismiss his First Amendment claim to the extent it is asserted against the DOC, and drop the DOC from this action.  Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The 14-day period may be extended upon motion.  Failure to file a specific written objection to the Report and Recommendation within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

June 8, 2021

cc:  Jeffrey Gray, pro se